# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

LAYLA FAKHR EL-DIN EL-SAWY and
EGYPTIAN EUROPEAN                              Case No. 2:20-CV-13409
PHARMACEUTICAL INDUSTRY,
an Egyptian Corporation,                       Hon. Laurie J. Michelson

     Plaintiff,                               Magistrate Judge R. Steven Whalen

v

REGENTS OF THE UNIVERSITY OF
MICHIGAN, a non-profit educational
institution of the State of Michigan, and
MARK L. DAY

     Defendants.

_____

## **DEFENDANT MARK DAY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (B)(6) AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

**INDEX TO AUTHORITIES** ...............................................................iv

**MOST APPROPRIATE AUTHORITIES** ......................................vii

**STATEMENT OF ISSUES PRESENTED** ......................................viii

**MOTION**...................................................................................1

**BRIEF IN SUPPORT OF MOTION** ...............................................1

**STATEMENT OF PERTINENT FACTS** ......................................3

**ARGUMENTS**............................................................................4

**I.    This Court should dismiss Plaintiffs' claims against Mark Day in his official capacity as an employee of the University of Michigan because the University has sovereign immunity under the Eleventh Amendment, and Day is entitled to the same immunity** .............................................6

    **A.    The University has sovereign immunity under the Eleventh Amendment** ...........................................................................6

    **B.    Day is entitled to sovereign immunity as an employee/agent of the University for claims against him in his official capacity**...............8

**II.    Day is entitled to sovereign immunity for any claims in Counts IV, V and VIII against him in his purported individual capacity as any such claims arise out of actions in his official capacity**................................10

**III.    Count IV fails to state a claim upon which relief can be granted for Intentional Infliction of Emotional Distress**.........................................13

**IV.**    **Count IV is barred by the 3-year statute of limitations**.......................18

**V.**    **Count V alleges a violation of the Elliot-Larsen Act which is barred by the 3-year statute of limitations**...............................................................19

**VII.**    **Count VIII fails to state a claim upon which relief can be granted for fraud/misrepresentation because EEPI alleges only misrepresentations of opinion or future actions**.....................................................................20


**CONCLUSION AND REQUESTED RELIEF** ...............................................22


**LOCAL RULE CERTIFICATION** ..................................................................22


**PROOF OF SERVICE** .......................................................................................23

# INDEX TO AUTHORITIES

## CASES

### U.S. Supreme Court cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................... 5
*Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997)* ............. 9
*Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989) ...................... 8, 9
*Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20, 60 S. Ct. 413, 414,
84 L. Ed. 554 (1940) ...................................................................................... 10, 13

### U.S. Circuit Court cases

*Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 206-207 (5th Cir. 2009) ...... 10
*Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641 (6th Cir. 2015); *see also In re
KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 343 (4th Cir. 2014) ......................... 10, 13
*Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) ........................ 10
*Fritz v. Charter Township of Comstock,* 592 F.3d 718 (6th Cir. 2009) ............. 5
*Gong v. University of Michigan*, 2019 WL 7598905, at *2 (6th Cir. Oct. 17, 2019)
(citing *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 851 (6th Cir.
1988)) ................................................................................................................ 6, 7
*In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 343 (4th Cir. 2014) ................ 10
*Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996) .................... 4
*Michigan SRR Co. v. Branch & St. Joseph Counties Rail Users Ass'n Inc.*, 287
F.3d 568, 573 (6th Cir. 2002) ............................................................................ 4
*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) ... 4
*Thiokol v. Department of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) ........... 7, 8

### U.S. District Court cases

*Ammex, Inc. v. Wenk*, 326 F.Supp.3d 472, 479 (E.D. Mich. 2019) (quoting
*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984)).... 6
*Ewing v. Board of Regents of Univ. of Michigan*, 552 F. Supp. 881, 883, 885
(E.D. Mich. 1982) ............................................................................................. 7
*Hilden v Hurley Med Ctr*, 831 F Supp 2d 1024, 1047 (E.D. Mich 2011) ........ 14, 17
*Klein v. University of Michigan*, 2018 WL 1614090, at *11 (E.D. Mich.
Feb. 23, 2018) (citation omitted) ..................................................................... 7, 8
*Martinson v. Regents of the Univ. of Michigan*, 2011 WL 13124122,
at *4 (E.D. Mich. Sept. 28, 2011) ..................................................................... 4

*Odom v. University of Michigan*, 2017 WL 2117978, at *5 (E.D. Mich. May 16, 2017) ........................................................................................................ 5
*Rice v. Wayne County Treasurer*, 2013 WL 5913685, at *7 (E.D. Mich. Nov. 1, 2013) .............................................................................................................. 8
*Thomas v. Noder-Love*, 621 Fed. Appx. 825, 831 (2015) (citing *Estate of Ritter*, 851 F.2d at 851); *Klein*, 2018 WL 1614090, at *11 ...................................... 7, 8
*Vigil v. Regents of Univ. of Michigan*, 980 F.Supp.2d 790, 802 (E.D. Mich. 2013) (citation omitted) ............................................................................................. 7
*Zarza v. Board of Regents of Univ. of Michigan*, 2019 WL 35536707, at *2 (E.D. Mich. Aug. 5, 2019) ................................................................................... 4

## <u>Michigan Supreme Court cases</u>

*Garg v Macomb County Community Mental Health Services,*
472 Mich 263, 281 (2005). ........................................................................... 19
*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976) .......................................................................................................... 21
*Lemmerman v Fealk*, 449 Mich 56, 63-64 (1995); MCL §5805(1) ............... 18
*Roberts v. Auto-Owners Insurance Company*, 422 Mich 594, 602 (1985) ...... 13
*Stephens v Dixon*, 449 Mich 531, 534-535 (1995) ......................................... 18

## <u>Michigan Court of Appeals cases</u>

*Bonelli v Volkswagen of America,* 166 Mich App 483, 516 (1988)................ 14
*Khalifa v Henry Ford Hosp*, 156 Mich App 485, 500 (1986) ......................... 14, 17
*Lucas v Awaad*, 299 Mich App 345, 359 (2013)............................................ 14
*M&D, Inc. v McConkey*, 231 Mich. App. 22, 27 (1998)................................. 20
*Mourad v Automobile Club*, 186 Mich App 715, 719, 731 (1991) ................. 14, 17

## <u>U.S. Constitution</u>

U.S. CONST. amend. XI. ................................................................................ 5-9

## <u>Federal Statutes</u>

42 U.S.C. §1983 ............................................................................................ 1, 8

## Michigan Constitution

Michigan Constitution 1963, Article VIII, § 5. ................................................ 7

## Michigan Statutes

Michigan Elliot-Larsen Civil Rights Act,  MCL § 37.2101 *et seq*................1,12, 19
MCL§600.5805(1) ................................................................................. 18, 19
MCL§600.5805(2) ................................................................................. 18, 19
MCL§600.5827 ...................................................................................... 18, 19

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 9(b) .................................................................................... 21
Fed. R. Civ. P. 12(b)(1) ............................................................................. 4, 6
Fed. R. Civ. P. 12(b)(6).............................................................................. 4, 5

## MOST APPROPRIATE AUTHORITIES

<u>Sovereign Immunity arguments</u>.

U.S. CONST. amend. XI.

*Gong v. University of Michigan*, 2019 WL 7598905, at *2 (6th Cir. Oct. 17, 2019).

*Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989).

*Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641 (6th Cir. 2015).


<u>Intentional Infliction of Emotional Distress argument</u>.

*Roberts v. Auto-Owners Insurance Company*, 422 Mich 594, 602 (1985).


<u>Statute of Limitations arguments</u>.

MCL §600.5805(2); MCL §600.5827

*Lemmerman v Fealk*, 449 Mich 56, 63-64 (1995).

*Garg v Macomb County Com.Mental Health Services*, 472 Mich 263, 281 (2005).


<u>Fraud argument</u>.

*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976).

## STATEMENT OF ISSUES PRESENTED

I.    Whether all claims against Mark Day acting in his official capacity should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) based on the sovereign immunity provided him by the Eleventh Amendment?

II.   Whether the Eleventh Amendment immunity applies to claims in Counts IV, V, and VIII against Mark Day in his individual capacity when Day's actions alleged in those claims were taken solely in his official capacity as an agent of the University of Michigan?

III.  Whether Count IV fails to state a claim upon which relief can be granted for Intentional Infliction of Emotional Distress?

IV.   Whether Count IV is barred by the applicable statute of limitations?

V.    Whether Count V alleging a violation of the Elliot-Larsen Act is barred by the statute of limitations?

VI.   Whether Count VIII fails to state a claim upon which relief can be granted for fraud or misrepresentation?

## MOTION

For the reasons provided in its brief in support of this motion, Defendant Mark L. Day ("**Day**") requests that this Court dismiss Counts I, II, III, IV, V, and VIII pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  The grounds for this motion are 1) lack of subject matter jurisdiction based on the sovereign immunity granted by the Eleventh Amendment to the U.S. Constitution, 2) failure to state claims upon which relief can be granted, and 3) claims are barred by the applicable statute of limitations.

Pursuant to L.R. 7.1, undersigned counsel requested concurrence in the relief sought in this motion on February 14, 2021 and set forth the basis for the motion. Plaintiffs' counsel declined to stipulate to such relief on February 15, 2021.

## BRIEF IN SUPPORT OF MOTION

## INTRODUCTION

Plaintiffs Layla Fakhr El-Din El-Sawy ("**El-Sawy**") and Egyptian European Pharmaceutical Industry ("**EEPI**") have collectively filed claims against the University of Michigan ("**University**") and Dr. Mark Day, PhD ("**Day**") for alleged violations of 42 U.S.C. § 1983, intentional infliction of emotional distress, violations of the Elliot-Larsen Civil Rights Act, breach of contract(s), and fraud/misrepresentation.

1

Plaintiffs' Complaint is comprised of 313 paragraphs spanning 80 pages. ECF No. 10, PageID.1-80. Following 143 paragraphs of "factual" allegations spanning 40 pages, *Id*. at PageID.2-41, Plaintiff El-Sawy advances three counts alleging (**Counts I-III**) violations of 42 U.S.C. §1983 against the University and Day in his official capacity. ECF No. 1, PageID.41-50. Plaintiff El-Sawy alleges claims against the University and Day in his official and individual capacities for intentional infliction of emotional distress ("IIED")(**Count IV**) and violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA")(**Count V**)[1]. ECF No. 1, PageID.50-56. Plaintiff EEPI then claims Day breached a consulting agreement (**Count VI**). ECF No. 1, PageID.56-59. Plaintiff EEPI then asserts a claim for breach of contract against the University (**Count VII**). ECF No. 1, PageID.59-74. Plaintiffs' complaint concludes with a claim by EEPI against the University and Day (no denomination of capacity for Day) for fraud/misrepresentation (**Count VIII**), ECF No. 1, PageID.74-79.

Plaintiffs voluntarily dismissed all claims against the University on February 8, 2021. ECF No. 10, PageID.97. Therefore, Count VII is no longer pending as it was solely brought against the University.

---

[1] Counts I, II, III, and V do not disclose which Plaintiff seeks relief in these counts but Day presumes only Plaintiff El-Sawy is the Plaintiff in these claims for her personal injuries.

## STATEMENT OF PERTINENT FACTS

Defendant Day, at all times material to this matter, was a professor in the University of Michigan Department of Urology. ECF No. 1, PageID.3, ¶9. Plaintiff El-Sawy was an employee of the University of Michigan working in the laboratory Day oversaw in the University of Michigan Department of Urology at all times material to her various claims. ECF No. 1, PageID.4, ¶13. Plaintiff EEPI is an Egyptian company that entered into several contracts with the University and a separate consulting contract with Day. ECF No. 1, PageID.7, ¶7; ECF No. 1, PageID.13, ¶48; ECF No. 1, PageID.56, ¶210. Day was working in his official capacity at the University at all times relating to Ms. El-Sawy's various claims. ECF No. 1, PageID.50-51, ¶183-186; ECF No. 1, PageID.53, ¶198. Day was working in his official capacity for the University as part of his duties relating to a contract between EEPI and the University when he allegedly made misrepresentations to EEPI. ECF No. 1, PageID.76, ¶298; ECF No. 1, PageID.77, ¶303-304.

Day's alleged conduct Plaintiff El-Sawy describes in support of her claim under the Michigan Elliot-Larsen Act occurred no later than September 2017. ECF No. 1, PageID.53 ,¶198. Day's alleged actions and statements Plaintiff El-Sawy describes in support of her claim for intentional infliction of emotional distress occurred no later than September 2017. ECF No. 1, PageID.30, ¶99.

# ARGUMENTS

## Standard of Review

Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction.

> Where federal subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction exists. *Michigan SRR Co. v. Branch & St. Joseph Counties Rail Users Ass'n Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.") "The court has wide discretion to consider materials outside the complaint in assessing the validity of its jurisdiction." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

*Martinson v. Regents of the Univ. of Michigan*, 2011 WL 13124122, at *4 (E.D. Mich. Sept. 28, 2011); See *Zarza v. Board of Regents of Univ. of Michigan*, 2019 WL 35536707, at *2 (E.D. Mich. Aug. 5, 2019).[2] For the reasons below, this Court should dismiss all claims against Day, except Count VI for breach of the Consulting Agreement, under Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(6) requires dismissal if a count fails to state a claim upon which relief can be granted.  Rule 12(b)(6) requires dismissal if a count fails to state a claim upon which relief can be granted. "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2] For convenience, Day attaches unpublished cases involving the University that are cited in this brief. **Ex. 1**.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v Twombly*, 550 U.S. at 570).

In *Fritz v. Charter Township of Comstock,* 592 F.3d 718 (6th Cir. 2009) the Sixth Circuit held that to survive a motion to dismiss a plaintiff must plead facts sufficient to demonstrate that the claims are "plausible i.e., more than merely possible." *Id*, at 723.

In deciding whether the plaintiff has met pleading standards and established a plausible claim, the court accepts factual allegations in the complaint as true, but the court is not required to accept the legal conclusions. *Iqbal*, 556 U.S. at 668. If the plaintiff's allegations, taken as true, are insufficient to state a facially plausible claim, the court must dismiss the suit. *Id*. at 678. While Plaintiffs' complaint is not short on factual allegations, nothing they allege suffices to establish plausible claims, and this suit must be dismissed under Rule 12(b)(6).

Likewise, Plaintiffs' state law claims are barred by sovereign immunity. In *Odom v. University of Michigan*, 2017 WL 2117978, at *5 (E.D. Mich. May 16, 2017), the district court again reaffirmed that Congress had not abrogated "Eleventh Amendment immunity for suits brought under § 1983." Turning to the plaintiff's claim under ELCRA, the district court agreed with the University that plaintiffs' "state-law age discrimination claim" under ELCRA was also barred since "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh

Amendment." *Id*. at *8 (citing *Pennhurst*, 465 U.S. at 121). Plaintiffs' state law claims are subject to dismissal for the same reason.

**I.**      **This Court should dismiss Plaintiffs' claims against Mark Day in his official capacity as an employee of the University because the University has sovereign immunity under the Eleventh Amendment, and Day is entitled to the same immunity.**

**A.**      **The University has sovereign immunity under the Eleventh Amendment**.

As "an arm of the state of Michigan," the University has sovereign immunity from federal lawsuits under the Eleventh Amendment. *Gong v. University of Michigan*, 2019 WL 7598905, at *2 (6th Cir. Oct. 17, 2019) (citing *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 851 (6th Cir. 1988)). Since Plaintiffs have failed to allege – and cannot establish – any exception to this sovereign immunity, this Court should dismiss all claims against it under Fed. R. Civ. P. 12(b)(1) as this Court lacks subject matter jurisdiction over the University or its employee Day for these claims.

While "often referred to as Eleventh Amendment immunity, sovereign immunity extends beyond the text of the Eleventh Amendment and 'limits the grant of judicial authority in [Article] III.[3]'" *Ammex, Inc. v. Wenk*, 326 F.Supp.3d 472, 479 (E.D. Mich. 2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

---

[3] The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State." U.S. CONST. amend. XI.

89, 98-101 (1984)); See *Klein v. University of Michigan*, 2018 WL 1614090, at \*11 (E.D. Mich. Feb. 23, 2018) (citation omitted). This sovereign immunity "'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments.'" *Gong*, 2019 WL 7598905, at \*2 (quoting *Thiokol v. Department of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Vigil v. Regents of Univ. of Michigan*, 980 F.Supp.2d 790, 802 (E.D. Mich. 2013) (citation omitted). Consequently, the Eleventh "Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power." *Id.* (citation omitted).

The University is a constitutional body corporate established and existing under the Michigan Constitution 1963, Article VIII, § 5. See *Ewing v. Board of Regents of Univ. of Michigan*, 552 F. Supp. 881, 883, 885 (E.D. Mich. 1982) ("the University is a state instrumentality entitled to Eleventh Amendment immunity"). Therefore, the Sixth Circuit has repeatedly found that "the University qualifies as an arm of the state of Michigan" for purposes of sovereign immunity under the Eleventh Amendment. *Gong*, 2019 WL 7598905 at \*2 (citing *Estate of Ritter*, 851 F.2d at 851); See *Thomas v. Noder-Love*, 621 Fed. Appx. 825, 831 (2015) (citing *Estate of Ritter*, 851 F.2d at 851); *Klein*, 2018 WL 1614090, at \*11 (the University "clearly falls under the definition of the state for purposes of immunity").

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity …" *Klein*, 2018 WL 1614090, at *11 (quoting *Will*, 491 U.S. 58 at 66). Indeed, it is

> … well-settled that such sovereign immunity applies to claims under § 1983, meaning that states and state officials sued in their official capacity are not considered "persons" under § 1983 and, therefore, cannot be sued for money damages without the state's consent.

*Thomas*, 621 Fed. Appx. at 831 (finding Eleventh Amendment rendered University "immune to all of Plaintiff's claims" (including § 1983)); See *Martinson*, 2011 WL 13124122, at *4 (citing *Will*, 491 U.S. at 71). In short, "Congress did not intend to abrogate the states' Eleventh Amendment immunity by passing section 1983." *Thiokol Corp.*, 987 F.2d at 383 (citing *Quern v. Jordan*, 440 U.S. 332 (1979)); See *Rice v. Wayne County Treasurer*, 2013 WL 5913685, at *7 (E.D. Mich. Nov. 1, 2013) ("Neither Congress nor the State of Michigan has waived Michigan's Eleventh Amendment immunity from suits brought under 42 U.S.C. § 1983).

## B. Day is entitled to sovereign immunity as an employee/agent of the University for claims against him in his official capacity.

The Eleventh Amendment likewise forbids Plaintiff El-Sawy from bringing her claims for personal injuries against Day since he was an agent of the University

at the time of every action alleged in the Complaint.  Similarly, EEPI cannot bring its claim against Day for fraud in the inducement of its contract with the University. This is known as derivative sovereign immunity. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself and is barred by the Eleventh Amendment.  *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989).

If an action is "in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). Lawsuits brought against State actors in their capacity as agents of the State are actually actions against the State. In Counts I, II, III, IV, and V of her Complaint, Plaintiff El-Sawy expressly alleges that Day is sued in his official capacity.  In Count VIII Plaintiff EEPI sues Day for alleged representations he made about the University project. ECF No. 1, PageID.76-79, ¶ 296, 303, 310.

The University of Michigan is the real party in interest and Plaintiff's claims against Day are in essence claims for the recovery of money from the University. There is a second, independent reason that bars Plaintiff's claims against Day under sovereign immunity principles. Under the doctrine of derivative sovereign immunity, private agents of the State are protected from liability for carrying out the

State's will. *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20, 60 S. Ct. 413, 414, 84 L. Ed. 554 (1940). The basis for derivative sovereign immunity is that "imposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).

As the Sixth Circuit has explained, if an agent's "authority to carry out the project was validly conferred, . . . there is no liability on the part of the contractor for executing its will." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641 (6th Cir. 2015); *see also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 343 (4th Cir. 2014) (recognizing derivative sovereign immunity for "contractors and common law agents acting within the scope of their employment for the United States"); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 206-207 (5th Cir. 2009) (where the actions causing the alleged harm were taken pursuant to government authority and there was no allegation or evidence of that authority not being validly conferred nor exceeded, derivative sovereign immunity applied). Therefore, all claims against Day in his official capacity in Counts I, II, III, IV, V and VIII should be dismissed.

## II.     Day is entitled to sovereign immunity for any claims in Counts IV, V and VIII against him in his purported individual capacity as any such claims arise out of actions in his official capacity.

As described above, Day is entitled to sovereign immunity for any claims against him in his official capacity as an employee/agent of the University. Although

both El-Sawy and EEPI appear to make claims against Day in his individual capacity, the Complaint allegations clearly show that any such claims seek damages for actions Day took in the course of his employment with the University.  Thus, Day is entitled to sovereign immunity from those claims against him in Counts IV, V and VIII.

*Count IV- Intentional Infliction of Emotional Distress- El-Sawy.*

Plaintiff El-Sawy specifically alleges that Day was acting in his official capacity when he demeaned her, verbally attacked her, and used profane language. ECF No. 1, PageID.50, ¶183.  Similarly, he was acting in his official capacity when she claims he asserted dominance over her at her work at the University. ECF No. 1, PageID.51, ¶184.  Mrs. Day was also acting in her official capacity when she tried to convert El-Sawy. ECF No. 1, PageID.51, ¶185.  Day was acting in his official capacity when he allegedly harassed and stalked her. ECF No. 1, PageID.51, ¶186. Plaintiff specifically alleges that "Day was acting within the scope of his authority as a professor employed by the University when he engaged in his extreme and outrageous behavior." ECF No. 1, PageID.52, ¶193.  Plaintiff El-Sawy makes not a single claim that Day was acting outside of the scope of his employment in Count IV.  Thus, there is no basis for her claim that he was acting in his individual capacity and Count IV should be dismissed on the basis that Day is entitled to sovereign immunity for Plaintiff's intentional infliction claim.

*Count V- Violation of Elliot-Larsen Act- El-Sawy.*

Similarly, Plaintiff El-Sawy's claim against Day in his individual capacity for violation of the Elliot-Larsen Act should be dismissed based on sovereign immunity. Every allegation of discrimination leveled at Day arises from his actions in his official capacity as a professor at the University. In paragraph 198 El-Sawy alleges that Day a) demeaned and verbally attacked her and used profane language around her, b) asserted his dominance over her, c) encouraged Mrs. Day to demean and try to convert Ms. El-Sawy, and d) harassed and stalked her. ECF No. 1, PageID.53-54, ¶198. <u>Each allegation claims Day committed the above acts in his official capacity</u>. Furthermore, Plaintiff's claim of constructive discharge is a claim that the University constructively discharged her when they held a hearing. ECF No. 1, PageID.54, ¶199. As her allegations show clearly, Day was not part of the hearing and only the University's actions are claimed to have provided the adverse employment action. ECF No. 1, PageID.54, ¶199; ECF No. 1, PageID.50, ¶183; ECF No. 1, PageID.34, ¶113, 116. Count V should be dismissed on the basis that Day is entitled to sovereign immunity for Plaintiff's Elliot-Larsen claim.

*Count VIII- Fraud/Misrepresentation- EEPI.*

EEPI's fraud claim should be dismissed based on sovereign immunity as any claims EEPI asserts arise out of Day's duties as a professor in relation to the contract between EEPI and the University.

Although the allegations against Day for fraud appear to be meshed with some type of contract claim, no matter how the allegations are labeled or interpreted they involve Day's actions during the course and scope of his University employment. Count VIII begins with a description of the Second Research Agreement (ECF No. 1, PageID.74, ¶288) which was an agreement between EEPI and the University. ECF No. 1, PageID.13, ¶48. Day was designated the Principal Investigator for that Project. ECF No. 1, PageID.13, ¶49. EEPI alleges various statements and recommendations made by Day as part of the study. ECF No. 1, PageID.75-78, ¶289, 291, 297, 298, 304, 305, 306. Every one of those statements related to the Project and how it would be conducted. EEPI alleges that it relied on the University and Day to its detriment in funding the University project. ECF No. 1, PageID.78, ¶309; ECF No. 1, PageID.79, ¶311. EEPI in essence seeks damages and equates Day with the University. Under *Adkisson v. Jacobs Eng'g Grp., Inc., supra;* and *Yearsley v. W.A. Ross Const. Co., supra,* EEPI's fraud claim against Day should be dismissed.

**III**.  **Count IV fails to state a claim upon which relief can be granted for Intentional Infliction of Emotional Distress.**

Michigan law has long recognized the tort of intentional infliction of emotional distress. The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Insurance Company*, 422 Mich 594, 602 (1985). A defendant may be found liable for

intentional infliction of emotional distress only where defendant's conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Roberts v. Auto-Owners Insurance Company, supra* at 603. Courts will not impose liability for mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. *Lucas v Awaad*, 299 Mich App 345, 359 (2013). An actor's conduct must be extreme before it is actionable and there is an objective test for whether that level has been obtained. Recovery for severe emotional distress is permitted "only in the most egregious cases." *Bonelli v Volkswagen of America,* 166 Mich App 483, 516 (1988).

Courts repeatedly reject IIED claims involving conduct by supervisors toward subordinates that was unfair, discriminatory, or unlawful. For example, in *Mourad v Automobile Club*, 186 Mich App 715, 719, 731 (1991), the demotion of an employee for refusing to comply with unethical and illegal orders was not extreme and outrageous. In *Khalifa v Henry Ford Hosp*, 156 Mich App 485, 500 (1986), the court affirmed dismissal of an IIED claim even though the defendant made statements that all Arabs are barbarians and "you people are dumb and slow." In *Hilden v Hurley Med Ctr*, 831 F Supp 2d 1024, 1047 (E.D. Mich 2011), the supervisor's conduct in firing employees for following the law and chasing an

14

employee through the halls, shouting and yelling, did not rise to level of outrageousness required to sustain employee's IIED claim.

Looking solely at the allegations of the Complaint, Plaintiff El-Sawy's allegations cannot support a claim for intentional infliction of emotional distress under Michigan law.  El-Sawy alleges that Day was repeatedly profane to her. ECF No. 1, PageID.6, ¶20; ECF No. 1, PageID.19, ¶68; ECF No. 1, PageID.50, ¶183. She alleges that on two occasions he told her that he could do whatever he wanted to her because he was a white American man and she was an Arab, Egyptian, Muslim woman. ECF No. 1, PageID.6, ¶21; ECF No. 1, PageID.17, ¶65; ECF No. 1, PageID.51, ¶184. Plaintiff alleges that Day yelled at her in October 2015. ECF No. 1, PageID.18, ¶66. She alleges he supported, encouraged, or facilitated his wife who denigrated El-Sawy's religion and tried to convert her. ECF No. 1, PageID.7, ¶22; ECF No. 1, PageID.19, ¶70-71; ECF No. 1, PageID.51, ¶185.  Finally, she alleges that he escalated his abuse by electronic stalking and threats to attack her reputation. ECF No. 1, PageID.7, ¶25; ECF No. 1, PageID.21, ¶75.

Plaintiff's allegations at most show insults, indignities, threats, annoyances, petty oppressions, and other trivialities that do not arise to the standard required to support her intentional infliction of emotional distress claim.

On August 30, 2017, EEPI accused Day of breaching the UM-EEPI contract by disclosing confidential information. ECF No. 1, PageID.20, ¶74.  As Professor

Day was Ms. El-Sawy's supervisor at the University at the time he certainly had the right to request that she respond to his calls and be upset that she was ignoring his requests to contact him. All of the alleged "stalking" described below occurred while Ms. El-Sawy was in Egypt and after she refused to contact her supervisor. ECF No. 1, PageID.22, ¶79  Day emailed El-Sawy to say "Thanks Layla!" ECF No. 1, PageID.21, ¶76.  He emailed her again using the term you people in reference to the persons on the EEPI side of the contract.   ECF No. 1, PageID.21, ¶77 Plaintiff did not quote the entire email and Plaintiff, not Day supplied the boldface in the quote. The emails described in paragraphs 78, 80, and 81 (ECF No. 1, PageID.22-23, ¶78, 80, 81) contain no insults or threats directed at El-Sawy, but simply argue over who breached the UM-EEPI contract and possible consequences of that breach. Paragraph 79 describes consequences if EEPI and El-Sawy breach the contract with the University. ECF No. 1, PageID.22, ¶79

Paragraph 82 details the numerous emails, unanswered calls and text messages Day sent on August 30, 2017. ECF No. 1, PageID.23-25, ¶82.  Day was in Michigan and El-Sawy was in Egypt for all these events. Not one of the texts or emails demeans Ms. El-Sawy's religion or national origin or physically threatens her. By her own account, Ms. El-Sawy never accepted even a single call or spoke to Day. ECF No. 1, PageID.23-25, ¶82.  Disregarding the bolded language (supplied by Plaintiff for this motion), there is nothing except arguments over the repercussions

of the EEPI allegation of breach.  Day texts that mention Ms. El-Sawy say that she has made a mistake, that she will never work in the US again, and that she had better call him.  Everything else is addressed to EEPI. ECF No. 1, PageID.23-25, ¶82.

Plaintiff El-Sawy then proceeds to allege various claims based on emails on August 31, 2017. ECF No. 1, PageID.27, ¶87-90.  None of those emails insulted her or made any threat to her.   He copied her on an email asking for her employment history, copied her on an email cutting her off from the Day's lab data, sent an email telling her that he expected a patent to be rejected, and sent her a copy of a letter. ECF No. 1, PageID.27, ¶87-90. Plaintiff alleges that Day texted her to call him or to send a letter of resignation. ECF No. 1, PageID.28, ¶91.  El-Sawy claims that Day's September 1, 2017 email was "manipulative" but there is no claim that the email was abusive or threatening to her. ECF No. 1, PageID.28, ¶92.  Finally, Day allegedly threatened Ms. El-Sawy with legal action in his last email.  ECF No. 1, PageID.29, ¶94.

Day's actions, as alleged, are no more outrageous than the facts found insufficient to sustain claims for intentional infliction of emotional distress in *Mourad v Automobile Club, supra, Khalifa v Henry Ford Hosp, supra,* or *Hilden v Hurley Med Ctr, supra.*  El-Sawy's claim for intentional infliction of emotional distress fails to state a claim upon which relief can be granted and should be dismissed.

## IV.  <u>Count IV is barred by the 3-year statute of limitations</u>.

Plaintiff's claim for intentional infliction of emotional distress is barred by Michigan's three-year statute of limitations.  MCL §600.5805(2) establishes a three-year statute of limitations for all cases for injuries to a person.  A claim for intentional infliction of emotional distress must be brought within three years of when the claim accrues. *Lemmerman v Fealk*, 449 Mich 56, 63-64 (1995); MCL §600.5805(1). A claim accrues at the time the wrong was done regardless of when damages result. MCL §600.5827.  The date the statue begins to run is when the plaintiff is harmed by the defendant's act. *Stephens v Dixon*, 449 Mich 531, 534-535 (1995).

Plaintiff El-Sawy filed her claim on December 30, 2020. ECF No. 1, PageID.1.  On the face of the allegations, Defendant Day's actions took place prior to 2017 and then during late August and early September of 2017.  Plaintiff extensively described Day's actions from August 30, 2017 through September 6, 2017.  ECF No. 1, PageID.21-29, ¶75-95.  Although Plaintiff did not always identify the dates when other actions occurred, it is clear from the allegations in the complaint that the claims of profanity etc. occurred prior to August 2017.  In paragraph 75 she refers to his "previous abuse," and in paragraph 86 she describes Day's <u>earlier</u> comments to her.  ECF No. 1, PageID.21, ¶75; PageID.26 86.  Thus, every action that could support this claim occurred no later than September 6, 2017-more than three years before this case was filed.

Moreover, Plaintiff's allegations make clear that she was allegedly harmed by the claimed outrageous behavior in September 2017.  Plaintiff claims that as a result of Day's actions she suffered a cardiac event on September 2, 2017 and she told her physician of the stress that same day. ECF No. 1, PageID.30, ¶99.  Plaintiff's claim accrued no later than September 2, 2017.  She filed more than three years after her claim accrued so it is barred.

**V.**   **Count V alleges a violation of the Elliot-Larsen Act which is barred by the 3-year statute of limitations.**

The statute of limitations for Plaintiff's claim under the Michigan Elliot-Larsen Civil Rights Act, M.C.L. §37.2101 *et seq.* is three years.  MCL §600.5805(2); *Garg v Macomb County Community Mental Health Services*, 472 Mich 263, 281 (2005).  As stated above as to Count IV, Plaintiff is required to bring her claim within 3 years of when the claim accrues, which is when the wrong is done and not when damage occurs. MCL §600.5805(1); MCL §600.5827.  Plaintiff's claim is untimely because the harm allegedly done to her by Day occurred in 2017.

As described above, Plaintiff alleged that all of Day actions of improper conduct occurred prior to September 7, 2017. ECF No. 1, PageID.21-29, ¶75-95; ECF No. 1, PageID.31-34, ¶101-113. Ms. El-Sawy made her First Misconduct Complaint against Day in October 2017.  ECF No. 1, PageID.32, ¶107.  Ms. El-Sawy alleged that the institution of disciplinary review conference proceedings against her, allegedly initiated by Day, constituted retaliation. ECF No. 1,

PageID.34, ¶113. Those proceedings were initiated in November 2017. ECF No. 1, PageID.33-34, ¶110-112. Plaintiff does not allege that she suffered any adverse employment action as a result of Day's actions. Instead, Plaintiff claims that she was constructively discharged when the University held a hearing. ECF No. 1, PageID.54, ¶199. Plaintiff never describes the alleged constructive discharge, other than to claim that the University, through the Office of General Counsel, failed to follow through on promised audits and on access to the Project's data. ECF No. 1, PageID.54-55, ¶199. Plaintiff's Elliot-Larsen claim is barred by the statute of limitations and should be dismissed.

## VII. Count VIII fails to state a claim upon which relief can be granted for fraud/misrepresentation because EEPI alleges only misrepresentations of opinion or future actions.

Under Michigan law the elements of actionable fraud are (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew when the representation was made that it was false, or made it recklessly, without knowledge of its truth as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act upon it, (5) the plaintiff acted in reliance upon the misrepresentation, and (6) the plaintiff suffered damage. *M&D, Inc. v McConkey*, 231 Mich. App. 22, 27 (1998). A case for fraudulent misrepresentation must be predicated upon a statement relating to a past or an

existing fact. Future promises are contractual and do not constitute fraud. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976).

Plaintiff must plead a fraud claim with particularity. Fed R Civ P 9(b). EEPI's fraud claim combines allegations of allegedly false statements and contractual duties. EEPI alleges that Day made certain statements in relation to the Second Research Agreement that was already in place. ECF No. 1, PageID.74-75, ¶288-291. EEPI does not allege that any statements were actually false, only that EEPI thinks they were "upon information and belief." ECF No. 1, PageID.75, ¶290-291. EEPI also alleges that Day owed a duty to EEPI to use reasonable care in providing advice to EEPI regarding the contract. ECF No. 1, PageID.77, ¶303. The alleged false statements by Day were actually advice or recommendations to EEPI about the contract. ECF No. 1, PageID.76, ¶297-298. It was his recommendation or advice that EEPI relied upon to its detriment. ECF No. 1, PageID.76, ¶298. EEPI also claimed that it relied on Day's exercise of ordinary care in advising EEPI-allegations that are insufficient to state a fraud claim. ECF No. 1, PageID.78, ¶309-310. Simply put, advice or recommendations cannot be false statements of past or existing <u>fact.</u> *Hi-Way Motor Co. v. International Harvester Co., supra.* EEPI's claim for fraud fails to state a claim under Michigan law and should be dismissed.

## CONCLUSION AND REQUESTED RELIEF

Based on the above authorities, this Court should dismiss Counts I, II, III, IV, V and VIII against Day without prejudice under Rule 12(b)(1) based on the sovereign immunity provided by the Eleventh Amendment, along with any other relief that the Court deems appropriate, just, and equitable.  Defendant Day requests that this Court dismiss Counts IV and VIII for failure to state claims upon which relief can be granted.  Day requests that this Court dismiss Counts IV and V as those counts are barred by the applicable statutes of limitations.

## LOCAL RULE CERTIFICATION

I certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Dated:          February 18, 2021          Respectfully submitted,

/s/ Thomas B. Bourque
Thomas B. Bourque (P46595)
DeLoof Dever Eby Wright Milliman
Bourque & Issa, PLLC
Attorneys for Defendant Day
301 North Main Street, Second Floor Ann
Arbor, MI 48104
(734) 769-2691

<u>PROOF OF SERVICE</u>

The undersigned certifies that a copy of the foregoing document was served upon the attorney(s) of record of all the party(ies) in this action by serving same at the business address(es) as disclosed by the pleading of record herein February 18, 2021, by Electronic Mail.

<u>/s/ Susan A. Frey</u><br>
Susan A. Frey